**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ADAM M. MADIGAN,**

               **Appellant,**

            v.

**STRAIGHT LINE, L.L.C. et al.,**

               **Appellees.**
_____

**3:20-cv-1087**
**(GLS)**

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE APPELLANT:**<br>Orville & McDonald Law, P.C.<br>30 Riverside Drive<br>Binghamton, NY 13905 | PETER A. ORVILLE, ESQ. |
| **FOR THE APPELLEES:**<br>Selbach Law Offices, P.C.<br>8809 Daylight Drive<br>Liverpool, NY 13090 | JAMES F. SELBACH, ESQ. |

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Appellant Adam M. Madigan appeals from a Memorandum-Decision and Order of Bankruptcy Court (Cangilos-Ruiz, C.J.), (Dkt. No. 2 at 15-31)

(hereinafter "Bankr. MDO"),[1] which granted a motion for summary judgment filed by appellees Jeffrey E. Barber (hereinafter "Barber"), Jean B. Barber, Emily J. Barber, Paul T. Barber, and Bethany A. Barber (referred to as "the Barbers"), and Straight Line, L.L.C., and found Madigan liable for damages in the amount of $1,480,580. (Bankr. MDO at 2, 28, 32.) For the reasons that follow, the August 28, 2020 judgment of Bankruptcy Court is affirmed.

## II. Background

### A. Facts[2]

Madigan filed a Chapter 7 bankruptcy petition in October 2015, and listed appellees "as holding general, unsecured, non-priority claims of unknown amounts . . . for a purported loan to purchase [Madigan's] home." (Bankr. MDO at 2.) Straight Line is a business that provides financing to dealers who buy vehicles at auctions run by State Line Auto Auction, Inc.,

---

[1] Citations to the Bankr. MDO refer to its internal page numbers. All other citations to Dkt. No. 2 refer to the CM/ECF-generated page number(s).

[2] The facts are taken from the Bankr. MDO, which are incorporated by reference by appellees in their brief, (Dkt. No. 10 at 1), and are adopted by this court to the extent both parties agree. Madigan's disagreements with Bankruptcy Court's factual findings are addressed below. *See* Part IV.

a related business. (*Id.* at 2-3.) Both of these businesses are owned by the Barbers. (*Id.*)

In October 2008, Madigan was hired to work at State Line, assigned to work on Straight Line matters. (*Id.* at 3.) He became a credit manager shortly thereafter, and was "responsible for checking a dealer's outstanding borrowing against the pre-approved credit limit" and for "maintaining the files on each dealer and releasing vehicle titles upon payment, as well as performing credit checks on customers and tracking outstanding loans." (*Id.*) "It was the general rule that Straight Line, as the secured lender, would retain titles to the vehicles until they were sold by the dealer, at which time the dealer would remit payment to Straight Line, and Straight Line would release the title to the dealer." (*Id.*)

In 2013, Joseph and Chauncy Strevell (hereinafter "the Strevells"), third parties who had been doing business with Straight Line for four months, opened a $200,000 line of credit. (*Id.*) Madigan allowed the Stevells to substantially exceed that credit limit, and, "by the end of 2013, [they] owed Straight Line $609,205.00." (*Id.*) When the Strevells began to finance cars with Straight Line on behalf of a company known as RJC Trading, Madigan never established a credit line, never performed a credit

3

check on the company, and did not require the Strevells to sign a financing agreement. (*Id.*) Moreover, Madigan routinely released vehicle titles to the Strevells before they paid, which was something Straight Line only did in limited, inapplicable circumstances. (*Id.* at 3-4.)

During the time that the Strevells had an active business relationship with Straight Line, Madigan did not disclose any of this information to appellees, despite the fact that Barber repeatedly asked him about them. (*Id.* at 4.) Specifically, when asked if the Strevells were "ok," Madigan responded that they "paid like clockwork," failing to "disclose that [they] had consistently paid late, were well above their credit limit, never signed a credit agreement through RJC trading, [and] that [Madigan] had been releasing titles without getting payment." (*Id.*)

Ultimately, appellees terminated all business with the Strevells when they learned from an auction owner that they "appeared to be legal risks." (*Id.*) Appellees then conducted an investigation of the Strevells' account, and discovered that Madigan had released titles for seventy-eight vehicles before receiving payment. (*Id.*) Barber "demanded that the Strevells sign new credit agreements for the amounts he believed they owed," and they did. (*Id.*) Thereafter, Madigan engaged in a cover-up; he "falsif[ied]

4

business records and [lied] to [appellees] and [the] police about how much the Strevells owed Straight Line." (*Id.* at 4-5.) Madigan eventually pleaded guilty to nineteen misdemeanor counts of falsifying business records for this conduct, and was ordered to pay $23,000 in restitution. (*Id.* at 5.)

**B.   Procedural History**

Appellees commenced an adversary proceeding, seeking an order from Bankruptcy Court that Madigan's debts to them were non-dischargeable under 11 U.S.C. § 727, on grounds of fraud and willful and malicious injury. (*See generally* Dkt. No. 3, Attach. 8.) After a bench trial, Bankruptcy Court held $1,300 to be non-dischargeable, finding that Madigan's embezzlement and conversion of funds constituted willful and malicious injury, but dismissed the balance of the $1,500,000 in claims for fraud. (Dkt. No. 4, Attach. 7 at 32.) Bankruptcy Court found that Madigan had made fraudulent misrepresentations with the requisite scienter but that appellees' reliance on Madigan's misrepresentations was not the cause of their damages. (*Id.* at 16-32.)

Appellees then appealed to this court. (Dkt. No. 4, Attach. 10.) In its August 19, 2019 Memorandum-Decision and Order (hereinafter "the August 2019 MDO"), this court found that Madigan's fraudulent

5

misrepresentations caused appellees' damages, and vacated the judgment and remanded the matter back to Bankruptcy Court to determine the amount of appellees' loss that was caused by Madigan. (Dkt. No. 4, Attach. 18 at 12--20.)

On remand, appellees moved for summary judgment, contending that there was no genuine issue of material fact that Madigan was liable to them for $1,480,580 in damages. (Dkt. No. 5, Attachs. 4, 9.) Bankruptcy Court granted appellees' motion and entered judgment in their favor. (Bankr. MDO; Dkt. No. 2 at 32.) Now pending is Madigan's appeal. (Dkt. Nos. 1, 9.)

### III. <u>Standard of Review</u>

District courts have jurisdiction to hear both interlocutory and final appeals from bankruptcy court orders and judgments. *See* 28 U.S.C. § 158(a). On an appeal, "a district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *Acee v. Oneida Savings Bank*, 529 B.R. 494, 496-97 (N.D.N.Y. 2015) (internal quotation marks and citation omitted). In exercising its appellate jurisdiction, the district court reviews findings of fact for clear error and conclusions of law de novo. *See R2 Invs., LDC, v.*

*Charter Commc'ns, Inc. (*In re *Charter Commc'ns, Inc.)*, 691 F.3d 476, 483 (2d Cir. 2012). "The court reviews mixed questions of law and fact either *de novo* or under the clearly erroneous standard depending on whether the question is predominantly legal or factual." *Hilton v. Wells Fargo Bank, N.A.*, 539 B.R. 10, 15-16 (N.D.N.Y. 2015) (citation omitted). A factual finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Johns-Manville Corp.*, 802 F. App'x 20, 23 (2d Cir. 2020) (citation omitted).

## IV.  Discussion

The sole issue before Bankruptcy Court on summary judgment was how much of appellees' approximate $1.5 million loss was caused by Madigan's misrepresentations during the relevant period of March 28 to May 23, 2014. (Bankr. MDO at 5-6.) Indeed, in the August 2019 MDO, this court found that Madigan's fraudulent misrepresentations caused appellees' injuries, and remanded the matter for a determination on the limited issue of the amount of appellees' loss that was caused by him. (Dkt. No. 4, Attach. 18 at 12-18.) As such, the issue of liability and, in particular, causation, was not before Bankruptcy Court when issuing the

7

judgment from which Madigan appeals, and, thus, is not before this court now. *See In re Fairfield Sentry Ltd.*, 539 B.R. 658, 672 (S.D.N.Y. 2015) ("The mandate rule compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." (internal quotation marks and citation omitted)).

Bankruptcy Court held that Madigan failed to present evidence to support his argument that there is a genuine issue of material fact as to the issue of damages, and, instead, relied on "open-ended questions which he le[ft] the court to answer." (Bankr. MDO at 8.) As such, Bankruptcy Court granted appellees' motion for summary judgment, finding that Madigan was liable for $1,480,580, the entire amount of appellees' claim. (*Id.* at 17.) Specifically, Bankruptcy Court found that Madigan's misrepresentations and omissions, as well as the release of the vehicle titles, occurred after the Strevells had surpassed their credit limit; that Madigan violated numerous company policies by, among other things, releasing titles to the Strevells without having first received payment and allowing the Strevells to substantially exceed their credit limit; and that, had appellees known the truth about the Strevells, they would have been able to prevent the entirety

of their damages.  (*Id.* at 8-17.)

Madigan appeals, arguing that Bankruptcy Court erred by: (1) stating that this court found that Madigan's conduct caused appellees' injuries in an amount up to their entire claim; (2) improperly basing its determination of damages on misconstrued evidence and/or evidence not in the record; (3) finding that the release of vehicle titles is relevant to the issue of appellees' loss; (4) finding that Barber's grant of credit to the Strevells is not a factor that needs to be considered in determining the amount of appellees' loss caused by Madigan; and (5) finding that appellees' losses would have been avoided if they knew all of the facts earlier.  (Dkt. No. 9 at 2.)  Madigan's grounds for appeal are supported by virtually no case law or record citations.  (*See generally* Dkt. No. 9.)  In any event, as explained below, all of his arguments are unpersuasive.

First, Madigan argues that this court foreclosed the possibility of a finding that he is liable for the entire amount of appellees' loss.  (*Id.* at 7.)  Bankruptcy Court is correct in that this court "did not make an affirmative finding that [Madigan] was not liable for the entirety of [appellees'] damages, but merely left open that possibility."  (Bankr. MDO at 12.)  Although this court noted in the August 2019 MDO that appellees

9

"recognize that Madigan is not responsible for *all* of their $1.5 million loss," (Dkt. No. 4, Attach. 18 at 19), the decision as to the amount of appellees' loss that Madigan is liable for was expressly remanded back to Bankruptcy Court for it to decide.  And, based on the fact that Madigan's "misrepresentations occurred well before the relevant period and prior to [appellees'] incurring any of the relevant damages," Bankruptcy Court reasonably found that Madigan was liable for the entire amount of the loss. (Bankr. MDO at 12.)  Thus, the argument that Bankruptcy Court erred merely because of this court's aforementioned statement, which was made in dicta, fails.

   Next, Madigan argues that Bankruptcy Court erred by finding that Madigan told appellees at weekly management meetings that the Strevells "pay like clockwork," that the question of what constitutes an improper release of titles is not material and not related to the issue of damages, and that Madigan had released titles to seventy-eight vehicles before receiving payment.  (Dkt. No. 9 at 8-11.)  As argued by appellees, (Dkt. No. 10 at 4), it is settled that Madigan made fraudulent misrepresentations that caused appellees loss, and, thus, even if Bankruptcy Court was wrong in noting that Madigan said that the Strevells "pay like clockwork" at the

10

management meetings, rather than on some other occasion prior to the relevant period, such finding is immaterial and harmless. Further, Madigan's contentions with respect to whether he improperly released the titles for seventy-eight vehicles involve factual issues that were already litigated and decided by Bankruptcy Court in its May 8, 2018 Memorandum-Decision and Order, and affirmed by this court in the August 2019 MDO. (Dkt. No. 4, Attachs. 7, 18.) Accordingly, these grounds for appeal are subject to clear error review only, and, having found none, they are rejected.

Madigan also asserts that Bankruptcy Court erred in determining that the release of titles is relevant to the issue of appellees' loss. (Dkt. No. 9 at 11-12.) Specifically, Madigan argues that, because a North Carolina State court, in a related action, "deemed that possession of the titles was not relevant to whether or not [a North Carolina] dealer could retain all of the vehicles without payment to Straight Line," the issue of prematurely releasing titles is not relevant to appellees' loss in this case. (*Id.*) The court disagrees. It is already settled that Madigan's concealment of his premature release of the vehicle titles, among other things, constituted fraud that caused appellees' loss. In other words, the finding of fraud is

11

based, at least in part, on Madigan's actions with respect to the vehicle titles, and, thus, is relevant. In fact, as argued by appellees, (Dkt. No. 10 at 6), without Madigan's actions, none of the seventy-eight vehicles would have been lost, and there would be no need to repossess them in the North Carolina litigation.

Madigan's fourth argument on appeal is that Bankruptcy Court erred by finding that Barber's grant of credit to the Strevells is not a factor to be considered in determining Madigan's liability for appellees' loss. (Dkt. No. 9 at 12-14.) Madigan asserts that, because credit was extended to the Strevells by Barber, and not Madigan, he should not be held responsible for all of appellees' loss. (*Id.*) In response, appellees argue that Madigan is merely attempting to shift the blame to them, but, had he fulfilled his own responsibilities, appellees would not have suffered their loss, that when Barber realized that the Strevells were far in excess of the credit limits, "the damage had already been done," and that this issue has already been litigated, decided, and affirmed, and addresses liability, a settled issue, rather than damages. (Dkt. No. 10 at 6-10.)

The court interprets this contention as one that involves mixed questions of law and fact, and, in an abundance of caution, has conducted

12

a de novo review.  *See Hilton*, 539 B.R. at 15-16.  Bankruptcy Court faced a similar, blame-shifting argument by Madigan below, and rejected it.  (Bankr. MDO at 14-17.)  It reasoned that "[i]t has already been established that the entirety of [appellees'] damages occurred prior to [them] learning that [Madigan] had released titles to the Strevells without a written agreement and at a time when they had exceeded their credit limit," and that, once appellees discovered this, they "immediately conducted an investigation and, after an initial assessment of their damages, had the Strevells sign an agreement, after which business with the Strevells ceased."  (*Id.* at 14.)  Further, Bankruptcy Court rejected Madigan's "unclean hands" and comparative negligence arguments, noting that the unclean hands defense is unavailable to a party in an action to recover damages for fraud, and that comparative negligence defenses are inapplicable to intentional torts.  (*Id.* at 14-17.)

After de novo review, this court comes to the same conclusion as Bankruptcy Court in this regard for the same reasons cited in the Bankr. MDO.  *See Plumbing Supply, LLC v. ExxonMobil Oil Corp.*, No. 14 CV 3674, 2017 WL 3913020, at *7 (S.D.N.Y. Sept. 5, 2017) ("[C]ontributory and/or comparative negligence is not a defense either to breach of contract

13

or to fraud." (citation omitted)); *Celebrity Cruises Inc. v. Essef Corp.*, 530 F. Supp. 2d 532, 541 (S.D.N.Y. 2008) ("[T]he cases that [hold that comparative negligence is unavailable as a defense to fraud] involve circumstances where . . . the defendant is contending that even if he defrauded the plaintiff, the plaintiff was partially responsible for his own injury[.] . . . Under these circumstances, courts are understandably reluctant to 'blame the victim' by reducing the compensation to the defrauded party." (citations omitted)); *Citicorp Leasing, Inc. v. United Am. Funding, Inc.*, No. 03 Civ. 1586, 2005 WL 1847300, at *7 (S.D.N.Y. Aug. 5, 2005) ("[U]nclean hands is an equitable defense and unavailable in an action seeking money damages. . . . As such, the defense concerning [the plaintiff's] alleged omissions and misrepresentations is inapposite and presents no bar to summary judgment." (internal quotation marks and citations omitted)).

Finally, Madigan asserts that Bankruptcy Court erred in finding that appellees' losses would have been avoided if they knew all of the facts at an earlier time. (Dkt. No. 9 at 14-15.) Madigan reasons that their losses would not have been avoided had they been apprised of all of the facts because, as determined in the aforementioned North Carolina litigation,

14

they could not have recovered any of their vehicles. (*Id.*) This argument misses the mark. As argued by appellees, (Dkt. No. 10 at 10), based on the findings by Bankruptcy Court, repossession of the vehicles would not have been necessary without Madigan's fraudulent misrepresentations and omissions, as the vehicles would not have been given to the Strevells in the first instance. Further, the court agrees with appellees, (*id.* at 11), that Madigan's additional argument—that Bankruptcy Court should have considered the fact that appellees issued a line of credit to the Strevells after learning they had exceeded their previous limit, (Dkt. No. 9 at 15)—fails because this occurred after the relevant period had expired and after the vehicles had been lost, and, thus, is not relevant to the issue of damages.

Accordingly, all of Madigan's grounds for appeal are rejected, and the August 28, 2020 judgment of Bankruptcy Court is affirmed.

### V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the August 28, 2020 judgment of Bankruptcy Court (Dkt. No. 2 at 32) is **AFFIRMED**; and it is further

**ORDERED** that the clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

September 30, 2021
Albany, New York

Gary L. Sharpe
U.S. District Judge